UNITED STATES, Appellant

v.

CARL H. BUCK, Master Sergeant, U. S. Marine Corps, Appellee

3 USCMA 341, 12 CMR 97

No. 2330

Decided September 11, 1953

CDR E. L. McDonald, USN, for Appellant.
CDR Francis X. Driscoll, USN, and CAPT Francis C. Foley, Jr., USMCR, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused, a master sergeant in the Marine Corps, was convicted by general court-martial of larceny of a quantity of chevrons valued at $496.00, the property of the United States, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. He was sentenced to a bad-conduct discharge, total forfeitures, confinement at hard labor for eighteen months, and reduction to the grade of private. At the conclusion of the trial the members of the court submitted a recommendation for clemency based upon the accused's prior service and lack of previous convictions. The convening authority then reduced the period of confinement to eleven months and the forfeitures to a partial forfeiture for a like period, suspending execution of the punitive discharge un-

til the accused's release from confinement or until completion of appellate review, whichever is the later date. For reasons hereinafter more fully developed, the board of review set aside the findings and ordered the charge dismissed. Thereupon, The Judge Advocate General of the Navy certified the following question to this Court:

"Whether the facts as found proved by the Board of Review in this case constitute a violation of Article 121 of the Uniform Code of Military Justice."

The pertinent facts of this case began to evolve when the accused entered the supply office of Camp Pendleton, California, in search of two friends assigned to duty there. Unable to find them, he engaged one Sergeant Hatley,

342

also assigned to that office, in conversation. After inconsequential preliminaries in which he identified himself simply as "Chuck," the accused disclosed his interest in obtaining large quantities of chevrons. He then declared he would pay Hatley $50.00 for a specified number of chevrons of various grades. The latter replied that obtaining the chevrons in the quantities desired would be difficult, and suggested that the accused call him the following day. When the accused had departed, Hatley reported the matter to his superior, the accountable officer, to the officer in charge of the section, and to the Depot Legal Officer. Hatley was directed by these officers to give the accused the requested items. On the following day, the accused telephoned Hatley and was advised that the chevrons were ready for him. Upon his arrival at the supply office, Hatley took three cartons containing the chevrons from stock and brought them to the door of the building. The accused took them from that location and placed them in the rear of his car parked at the door. He then re-entered the office and paid Hatley the agreed $50.00, stating both would make money for he would receive $25.00 for each case. Although the entire proceedings were observed by an agent of the Criminal Investigation Division and other noncommissioned officers who were aware of the accused's intentions, the accused left the premises so rapidly that he was not apprehended as planned. Shortly thereafter he was arrested by State Highway Patrolmen, but the chevrons were not in his possession. When questioned about their whereabouts, the accused explained that he had delivered them to another immediately upon leaving Camp Pendleton. The chevrons were ultimately returned to the authorities by a person, or persons unknown.

Holding that these facts do not constitute larceny, the board of review declared:

"The facts indicate that the taking was not a trespass and was with the consent of the custodian. A consideration was paid by the accused to Sergeant Hatley for the chevrons. The accused may have thought he was buying stolen property but he was not."

It should be clear from the outset that in declaring that the taking was not a trespass and was accomplished with the consent of the custodian, the board of review was not exercising its fact-finding powers under Article 66 (c), Uniform Code of Military Justice, 50 USC § 653. This statement is a conclusion of law based upon other facts found by the board, as set out above. We are in no way precluded, therefore, from reviewing this record to test the validity of this conclusion in the light of existing law on the subject. United States v. Engle, 3 USCMA 41, 11 CMR 41, decided July 10, 1953.

By enacting Article 121 (a), supra, Congress eliminated the oftimes subtle and confusing distinctions previously drawn between common law larceny, embezzlement, and false pretenses. United States v. Aldridge, 2 USCMA 330, 8 CMR 130, decided March 24, 1953; United States v. Norris, 2 USCMA 236, 8 CMR 36, decided February 27, 1953. The consolidation of these crimes, however, did not enlarge the scope of the statutory crime of "larceny" to include more than its components previously encompassed. Since the whole is equal to, not greater than, the sum of all its parts, that which did not constitute common law larceny, embezzlement, or false pretenses, prior to the adoption of Article 121 (a), supra, was not thereafter punishable as a violation thereof. Viewed in any light, the facts of the instant case do not establish the accused's guilt predicated upon a theory of embezzlement, or false pretenses. Therefore, if these facts support conviction, it must be upon a theory of common law larceny.

There are three situations in which persons in authority ostensibly lend their support to the commission of a crime solely to apprehend and punish another. In the first, one intent upon the commission of crime is afforded ample opportunity to rush to his own destruction, while the authorities, having set a trap to catch him, smooth his path, but do not otherwise accelerate

his progress. Under these circumstances a crime is in fact committed, and the prosecution of the wrongdoer so trapped is not barred, for the law in no way prohibits the use of artifice or stratagem to catch those engaged in criminal enterprise. Grimm v. United States, 156 US 604, 39 L ed 550, 15 S Ct 470; Goode v. United States, 159 US 663, 40 L ed 297, 16 S Ct 136; Sorrells v. United States, 287 US 435, 77 L ed 413, 53 S Ct 210. Thus, placing the property where it can be taken by the intended thief,[1] or signaling to the intended thief,[2] or notifying him that the owner will be away from home,[3] or consenting to the loan of a wagon to him to carry away the property,[4] has been held lawful. Similarly, turning a horse loose so that it can be taken by the thief, does not negative the ultimate larceny.[5] So too, a detective who puts himself in a position where a thief can pick his pockets[6] is not considered to have consented to the theft. 52 CJS Larceny, § 24, page 817.

On occasion, however, the plans to ensnare, involve an abuse, rather than simply the use, of artifice and stratagem. In this situation, the individual laying the trap overreaches himself to the point of negativing an essential element of the crime, and thus the crime itself. Specific examples of this situation are hereinafter set forth. The line separating the first two possibilities is frequently indistinct and difficult to define. So each case must be decided upon its own facts. Both have a common denominator in that the person trapped planned the intended crime. This feature distinguishes the first two situations from the third and final one, namely, entrapment.

In the last classification, the plan of the crime is conceived by the authorities, who then lure an otherwise innocent man to its accomplishment. When this fact is present, the decisions hold that the Government is estopped from contending that the person so enticed is guilty, for Government officials instigated the very conduct of which they complain. Sorrells v. United States, *supra;* O'Brien v. United States, 51 F2d 674 (CA 7th Cir).

At the outset we eliminate the subject of entrapment from consideration, for the record does not admit of even a suspicion that the authorities planned the larceny charged. United States v. Jewson, 1 USCMA 652, 5 CMR 80, decided August 29, 1952. It is clear, therefore, that our problem is to determine into which of the first two categories the facts of this case fall.

In the second classification, above referred to, are those cases involving offenses requiring that the proscribed act be "against the will" of the party injured. Hence, a prosecution for rape cannot be maintained when the victim invited the act. Commonwealth v. McDonald, 110 Mass 405; Brown v. People, 36 Mich 203; State v. Burgdon, 53 Mo 65. The same result obtains when an individual procures another to rob him. In such case, he is held to have consented to the assault necessarily involved in robbery, thus negativing one of its essential elements. Long v. State, 12 Ga 293. See also note of Francis Wharton to Bates v. United States, 10 F 92, 97–99 (CC Ill). Similarly in a prosecution for burglary one who has knowingly admitted into his home a person intent upon committing larceny therein, is held to have negatived the essential element of breaking. Seiden v. State, 3 Tex App 153.

Discussing the application of this principle in a larceny case, the Circuit Court of the Eastern District of Missouri declared in United States v. Whittier, Fed. Cas. No. 16,688:

". . . The reason is obvious, viz: The taking in such cases is the very essence of the offense, and hence no offense in the eye of the law, has been committed. The offender may be

---

[1] State v. Marsalise, 172 La 796, 135 So 361; State v. Natalle, 172 La 79, 135 So 34.

[2] State v. Smith, 33 Nev 438, 117 P 19.

[3] Sanders v. State, 2 Tenn Cas 606.

[4] Varner v. State, 72 Ga 745.

[5] Conner v. State, 24 Tex App 245, 6 SW 138.

[6] People v. Hanselman, 76 Cal 460, 18 P 425.

morally guilty as if the owner had not consented, but a necessary ingredient of legal guilt is wanting."

Following this reasoning, the Supreme Courts of Wisconsin and Missouri in Topolewski v. State, 130 Wis 244, 109 NW 1037, and State v. Perrin, 316 Mo 585, 292 SW 54, have held that when the owner of property delivers, or causes another to deliver, the property to one known to be intent upon stealing it, he has consented to the taking, although the owner's purpose was to catch the thief. In these cases consent was held to negative the trespass, and thus the crime itself. Similar problems are presented in cases involving the use of decoys. In such cases, if the intent originates with, and is carried out by, the person so decoyed, and it is shown that the decoy accompanied him only to procure evidence, or even assist him in the commission of the crime for the same purpose, a conviction will be upheld. It is necessary to show that he participated in every essential act necessary to constitute the crime, however, for obviously no act of the decoy can be imputed to him, because they do not share a common criminal intent or purpose. The one intends a crime, while the other seeks only to apprehend the criminal. Paragraph 156, Manual for Courts-Martial, United States, 1951; People v. Lanzit, 70 Cal App 498, 233 P 816, 820; State v. Neely, 90 Mont 199, 300 P 561.

In the instant case, the evidence is susceptible of but one interpretation. The plan of the accused was to enlist the aid of the supply sergeant, Hatley, in the commission of larceny. For this assistance it was agreed that he would be paid fifty dollars. Manifestly, the plan did not contemplate a theft of the chevrons by Hatley and a subsequent sale to the accused. Here Hatley served as a decoy to permit the authorities to trap the accused in the commission of the very crime which he, the accused, planned. All of the acts which followed were in accordance with the plans made by the accused. The problem presented is the determination of whether the actions of the decoy, performed at the direction of his superiors, constituted a consent to the taking by the owner of the property, to wit, the United States, or, since none of the acts can be imputed to the accused, supplied a necessary element not otherwise participated in by the accused. The result arrived at by the board of review may be affirmed only if either circumstance is present in this case.

The determination of the question of consent to the taking depends upon the authority of the officers, ▮▮▮▮▮▮▮ ▮ and of the supply sergeant, over the Government property involved. State v. Neely, *supra*. The authority of the accountable officer, and of the officer in charge of the section, is found in pertinent provisions of the Marine Corps Manual, defining with great particularity the management, control, issue, and disposal of property. Neither expressly nor by implication does the Manual authorize the delivery of any property under the circumstances herein involved. Nor could the advice of the legal officer, who counselled them in the course they pursued, confer such authority. Whether the officers and Hatley intended to surrender possession outright, or solely to catch an offender, their actions could not bind the Government. Since each lacked the power to surrender possession, the Government did not consent to the taking, and no essential element of the crime was negatived. People v. Mills, 178 NY 274, 70 NE 786.

There remains only the question of whether the actions of the accused alone constitute each essential element of the crime of larceny as set out ▮▮▮▮▮▮ ▮ in paragraph 200*a*, Manual for Courts-Martial, *supra*. With only the first of these elements are we concerned, namely, the wrongful taking from the possession of the true owner.

When Hatley removed the chevrons from the stock room shelves and placed them at the door of the building, they were still in the possession of the Government, for they were in the very building maintained for their storage. The removal of them from this position by the accused clearly constituted a "taking." In view of his clearly wrongful purpose, and the absence of Govern-

**345**

ment consent thereto, this "taking" was "wrongful." Therefore, the actions of the accused established each essential element of the offense charged.

It necessarily follows that the question certified is answered in the affirmative.

The decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Navy for further action not inconsistent herewith.

Judges LATIMER and BROSMAN concur.