UNITED STATES, Appellee

v

MICHAEL J. TAMAS, JR., Private, U. S. Marine Corps, Appellant

6 USCMA 502, 20 CMR 218

503

504

No. 6596

Decided November 18, 1955

*Captain G. M. Rumble, Jr.,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Commander Benjamin H. Berry,* USN.

*Commander Guilbert W. Martin,* USN, argued the cause for Appellee, United States. With him on the brief was *Commander Lewis N. Evans,* USN.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

I

Despite his plea to the contrary, the accused was convicted by a general court-martial of the wrongful sale of Government property, in violation of Article 108, Uniform Code of Military Justice, 50 USC § 702; two larcenies, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715; accessory after the fact (of a larceny), in violation of Article 78, Uniform Code of Military Justice, 50 USC § 672; and wrongful possession of a false ration book with intent to deceive, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to dishonorable discharge, total forfeitures, and confinement for five years, all of which the convening authority approved. The board of review

**505**

affirmed all findings except the one which found the accused guilty of being an accessory after the fact. As to that finding the board affirmed only so much as found the accused guilty of assisting a thief by concealing what the accused knew to be stolen property, in violation of Article 134 of the Code. It affirmed the sentence as imposed. We granted the accused's petition for review to consider several issues, which may be summarized as follows:

1. Whether the evidence is sufficient as to the offense of larceny of a pistol (Specification 2, Charge II).

2. Whether the specification which purported to allege the offense of accessory after the fact was sufficient to allege an offense, and if so, the maximum penalty for such a dereliction.

3. Whether the evidence is sufficient to show an intent to deceive with respect to the wrongful possession by the accused of a false ration book.

4. Whether the sentence is within the maximum limits imposed by law.

## II

Only those facts which are necessary to a proper understanding of the issues considered by us are set forth herein. On or about December 2, 1953, the accused and Private First Class Thomas Jones, who had known the accused for over a year, went to the rear of their regimental mess hall at Middle Camp Fuji, Japan. There they had secreted a large package, wrapped in brown paper, which contained twenty pounds of coffee worth less than $20.00. Through the use of a ruse, the accused succeeded in taking this package past the gate guard, and thereafter he sold the coffee to a Japanese civilian in Gotemba, Japan. The coffee was the property of the United States.

On several occasions during the period December 1, 1953, to December 4, 1953, the accused asked Jones to obtain a caliber .45 service pistol for him to sell to a Japanese civilian. Jones was reluctant to obtain the weapon but eventually he agreed to consider the proposition. His assigned place of duty was in the company armory, the pistols were normally kept there, and the accused was informed that if a pistol was to be obtained, it had to come from that source of supply.

Unfortunately for the accused, Jones had notified the Marine Corps authorities about the accused's desires. They instructed him that if the subject was again broached, he was to comply with accused's request. In accordance with the directions given him, when Jones was next importuned to deliver a pistol, he agreed to do so. On December 5, 1954, he obtained a caliber .45 pistol from Sergeant Grantham of the Provost Marshal's Office and transported it to a local bar in Gotemba. Upon meeting the accused, the twosome—pursuant to a prior agreement—retreated to the men's lounge, where Jones handed over the pistol. The accused took it, secreted it on his person, and immediately thereafter was apprehended by Sergeant Grantham, who chose that moment to enter the room.

During the early morning hours of February 12, 1954, the pawnshop of Masayoshi Tomura, located in Shizuoka, Japan, was burglarized. The accused came under suspicion concerning this offense, and the storage places to which he had access were searched. A large number of watches, cameras, and items of jewelry were found. The accused subsequently admitted that he had received the valuables from a friend of his; that he knew they were stolen property; and that he had agreed to hide them for the thief. Upon finding the hiding place of the stolen goods, the investigators placed the accused under arrest and searched him. Two ration books for cigarettes and beer were found on his person, whereas only one was authorized. When asked about this, the accused admitted that one book bore a forged signature of authorization.

## III

. The first argument made concerning the offense of larceny of the pistol questions the sufficiency of the evidence to show a wrongful taking. Appellate defense counsel argued, both ably and sin-

cerely, that the facts do not establish the offense charged because the accused acquired possession of the pistol from Jones with the consent of both Jones and local military authorities. Thus, counsel assert that no matter how intent upon committing larceny the accused might have been, his effort was bound to fail, for his acceptance of the pistol was not a trespass. At this point, it should be made clear that there is no claim of entrapment made by defense counsel, nor could such a claim be made, for the evidence establishes that the criminal plan originated in the mind of the accused and it was carried out at his insistence.

It is hornbook law that no larceny is committed in a situation where an owner of property, or a decoy ▆▆▆ employed by him in an attempt to ensnare the thief, so participates in the commission of the act as to prevent the accused from doing everything necessary to commit the crime. It is vital to the commission of an offense that an accused participate directly in enough of the transaction so that the acts with which he is chargeable personally are sufficient to make out a complete offense. State v Neely, 90 Mont 199, 300 Pac 561 (1931); Annotation, 86 ALR 263, 270.

In United States v Buck, 3 USCMA 341, 12 CMR 97, the accused asked one Hatley, a supply sergeant, to obtain a large quantity of chevrons for the accused, and promised to pay Hatley $50.00 for his assistance. Hatley delayed the giving of his answer for a day, and meanwhile secretly contacted his superiors, who advised him to join in the scheme. Hatley then informed the accused that the chevrons were ready, and placed a large quantity of them near the entrance to the supply room. The accused came to the supply room, placed the chevrons in his car, and paid Hatley the sum agreed upon. In our opinion, we adverted to the principle of the Neely case, supra, carefully distinguished it from entrapment, and said concerning it:

"In the second classification, above referred to, are those cases involving offenses requiring that the proscribed act be 'against the will' of the party injured. Hence, a prosecution for rape cannot be maintained when the victim invited the act. Commonwealth v. McDonald, 110 Mass 405; Brown v. People, 36 Mich 203; State v. Burgdon, 53 Mo 65. The same result obtains when an individual procures another to rob him. In such case, he is held to have consented to the assault necessarily involved in robbery, thus negativing one of its essential elements. Long v. State, 12 Ga 293. See also note of Francis Wharton to Bates v. United States, 10 F 92, 97–99 (CC Ill). Similarly in a prosecution for burglary one who has knowingly admitted into his home a person intent upon committing larceny therein, is held to have negatived the essential element of breaking. Seiden v. State, 3 Tex App 153."

The difficulty with defense counsel's argument is that the facts in this record do not bring this case ▆▆▆ within the rule admittedly applicable. To support his assertion, counsel must read into the acts done by Jones and the Marine Corps authorities a consent which they could not give, and which the accused knew could not be given. The pistol was the property of the United States Government, not of Jones or Sergeant Grantham, and they could neither give the pistol away nor permit the accused to take or dispose of it. Had Jones and the Marine Corps authorities not acted with innocent intentions, they would have been guilty of larceny. Granted that under their method of operation they committed no offense, that does not furnish support for a holding that they possessed the power to consent to the taking by the accused. Nothing in Marine Corps Regulations, military law, customs of the service, or the Manual for Courts-Martial authorizes the delivery of property under these circumstances, and we are satisfied that consent could not be given to such an arrangement. It follows that the Government did not consent to the taking and the essential element of trespass was not negatived. United States v Buck, supra; People v Mills, 178 NY 274, 70 NE 786 (1904).

**507**

Counsel for the accused next argue that there was no larceny of the pistol because the entire asporta- ▮▮ tion of the weapon was done by Jones. The argument is ingenious but not convincing. The Manual for Courts-Martial, United States, 1951, paragraph 200*a* (2), page 357, deals with the question of taking, and provides:

". . . As a general rule, however, any movement of the property or any exercise of dominion over it by any means is sufficient if accompanied by the requisite intent."

The rule expressed above, that any movement or exercise of dominion over the property is sufficient, is supported by the great weight of authority. Stated tersely, the rule in the Federal civilian courts is that the degree of the taking is immaterial, the least removing of the thing taken from the place it was before, with intent to steal it, being sufficient. Rutkowski v United States, 149 F2d 481, 482 (CA6th Cir) (1945), and cases cited therein; United States v De Normand, 149 F2d 622, 624 (CA 2d Cir) (1945); Wharton, Criminal Law, 12th ed, § 1163.

In People v Bradovich, 305 Mich 329, 9 NW2d 560, the defendants removed clothing from a rack and concealed it under their own apparel. In disposing of a contention that there was no asportation, the Supreme Court of Michigan said:

"The trial judge was evidently of the opinion that, inasmuch as the defendants had shed their plunder without leaving the store, they had thus purged the taking thereof and gave defendants the benefit of a doubt created thereby. If so, in point of law the judge was mistaken. The crime of larceny was completed when defendants removed the clothing from the rack and concealed it beneath the clothing they were wearing.

"Defendants claim there was no asportation from the store of the clothing so concealed. Removal of the clothing from the rack and concealing it under their own clothing constituted asportation. See note 19 A.L.R. 724."

508

When we consider the facts of this case, in the light of what we believe to be sound principle, we conclude there was sufficient evidence of asportation, for the accused accepted the pistol from Jones, secreted it on his person, and he was not apprehended until after the weapon had been well concealed. For a measurable period of time, however slight, the accused had full possession of, and actual dominion over, the pistol.

## IV

The specification of Additional Charge I purported to allege the offense of accessory after the fact. In pertinent part the specification read as follows:

". . . In that . . . [the accused], knowing that . . . George A. Turner had committed . . . [the offense of] larceny, did, at Middle Camp Fuji, Japan, on or about 12 February 1954, in order to assist the said Turner conceal some of the items stolen by the said Turner, to wit: . . . [then followed a listing of dozens of watches, rings, cameras, and other items of jewelry]."

The board of review held that this was insufficient to allege an offense in violation of Article 78 of the Code because of a failure to allege that the accused relieved, comforted, or assisted Turner, the felon. Furthermore, it reasoned that the offense of receiving or concealing stolen property was not alleged, for there was no allegation of ownership or value with respect to the property concealed. However, the board concluded that the specification was sufficient to allege the act of concealing stolen property to assist a thief, and that such an act constituted an offense in violation of Article 134. We must determine, therefore, whether the board of review misconstrued the legal effect of the words alleged here.

First, we are not free to conclude that the offense found by the board is akin to the offense of concealing ▮▮▮▮ stolen property, for that dereliction carries a greater penalty than is imposable upon one convicted of being an accessory after the fact. Manual for Courts-Martial,

United States, 1951, paragraph 127c, Table of Maximum Punishments. Thus, a holding to that effect would result in an affirmance of a more serious offense than the one upon which the accused was put to trial. Nor need we determine whether the act of concealing stolen property is a separate offense punishable under Article 134 of the Code, for we hold that the specification under attack fairly alleges the offense of accessory after the fact.

We are willing to accept, arguendo, the board of review's conclusion that the mere receipt of stolen ■ property does not constitute the receiver an accessory after the fact to the larceny. Wharton, Criminal Law, 12th ed, § 281, footnote 4. However, at that point we part company with the board, as we find one element alleged here which is in addition to those necessarily involved in the offense of receiving stolen property. Conceding the specification is not drawn artfully, it alleges that the accused concealed the enumerated property to assist the thief. The concealment was alleged to have occurred on the same day as the theft and obviously it would be of substantial assistance to the one who had committed the larceny, to be able to part, temporarily, with the loot and have someone conceal it, thus aiding and assisting him in avoiding detection and escaping prosecution.

We do not quarrel with those authorities which limit the offense of accessory after the fact to har- ■ boring or concealing the offender, but the statute which controls in military law is of such scope as to include assistance that is not of such a personalized nature. While the offense is purely statutory, we are not disposed to interpret the codal provision defining the offense so narrowly that we do not give full effect to all of its words and phrases. Article 78 of the Code, which is the punitive Article involved, provides as follows:

"Any person subject to this code who, knowing that an offense punishable by this code has been committed, receives, comforts, or assists the offender in order to hinder or prevent his apprehension, trial, or punishment shall be punished as a court-martial may direct."

The framers of the Manual must have also concluded that concealing the fruits of a larceny would render the aider liable as an accessory after the fact for they stated:

"The assistance given a principal by an accessory after the fact is not limited to assistance designed to effect the personal escape of concealment of the principal, but includes those acts which are performed to conceal the commission of the offense by the principal. Thus a person is an accessory after the fact if, knowing that a crime has been committed, he assists and aids in concealing or suppressing evidence thereof. However, mere failure to report a known offense will not constitute one an accessory after the fact." [Paragraph 157.]

The Article above quoted is taken almost verbatim from Title 18 USC § 3. That section has been considered by the Circuit Courts of Appeals for the Second and Tenth Circuits. In United States v Bollenbach, 147 F2d 199 (CA 2d Cir) (1945), Judge Learned Hand had this to say:

". . . That [sentence of the court's charge] implied that he could be guilty of a conspiracy to transport stolen notes, if he joined in their disposal after the transportation had ended. Strictly speaking, that was not any part of the crime for which he had been indicted; the substantive crime—and also the conspiracy to commit it—ended when the notes came to rest in New York. However, to help dispose of them was to become an accessory after the fact, and that was also a crime (§ 551, Title 18 U.S.C.A.). It was therefore also a crime to join a conspiracy to dispose of them; and for that crime the conspirators joining after the transportation was over might be indicted as principals. Skelly v United States, 10 Cir., 76 F2d 483. (Incidentally, this disposes of the objection that the overt acts were

**509**

all laid after the notes had come to New York.)"

In Skelly v United States, 76 F2d 483 (CA10th Cir) (1935), Judge Phillips, speaking for the Circuit Court of Appeals, Tenth Circuit, said:

"An accessory after the fact is one who, knowing a felony to have been committed by another, receives, relieves, comforts, or assists the felon in order to hinder the felon's apprehension, trial, or punishment.

"Berman and Skelly, with knowledge that the substantive offense had been committed, agreed with Bates, one of the principals to the substantive offense and an original member of the conspiracy, to commit certain criminal acts [converting ransom notes to unidentifiable currency] and thereby assist such principals to avoid detection, apprehension, trial, and punishment.

"Upon the commission of such acts by Berman and Skelly they would become accessories after the fact to the principals to such substantive offense, and upon conviction thereof liable to punishment as provided in 18 USCA § 551."

The board of review in its decision concluded that by dealing only with the goods, the accused was not guilty of being an accessory after the fact. Such might be the case if there was no intent to assist the thief by hindering or preventing his apprehension or trial; but if the concealing was done for that purpose, then the assistance becomes personalized. Here the property taken was valuable jewelry which was recently stolen and easy to secrete. To conceal it immediately following the burglary would be of assistance to the felon by making his detection, apprehension and prosecution more difficult. To say the least, the concealment would make it possible for the person committing the larceny to escape the presumption flowing from possession of recently stolen property.

As we have remarked about other pleadings, this specification is not a model of clarity and completeness, but it alleges in plain and ordinary language that the concealment was for the pur-

poses of assisting the thief, and this, we hold, is enough to allege the offense of accessory after the fact. Moreover, these allegations are sufficient to put the accused on notice of the offense of which he is charged and to permit him to prepare adequately any defense he sought to raise. Assuming the pleader merely alleged a conclusion, █ if the accused desired to know the particular manner in which the Government claimed he assisted, a motion for appropriate relief to make the specification more definite and certain could have been interposed. Cf. United States v Karl, 3 USCMA 427, 12 CMR 183. In the absence of such a motion, we conclude the accused should not be heard to complain on the grounds that the specification was incomplete, uncertain and indefinite.

V

There is one further matter which requires discussion and it raises a question concerning the █ penalty for this particular offense. The Table of Maximum Punishments provides that one-half the maximum confinement provided for the principal offense is all that can be imposed for the crime of accessory after the fact. The penalty for the substantive offense of larceny is graduated according to the value of the property taken, and value controls the punishment which can be imposed both for that offense and its derivative accessory offense. We have previously held that value is an essential ingredient of larceny, and, therefore, a specific value is normally both pleaded and proven. United States v Peterson, 2 USCMA 645, 10 CMR 143. But where any reasonable person would be compelled to conclude that the articles taken had some value, the omission of an allegation of specific value is not fatal to a conviction for that offense. United States v May, 3 USCMA 703, 14 CMR 121; United States v Johnson, 3 USCMA 709, 14 CMR 127. That is not to say, however, that an omission of an allegation of specific value does not preclude punishment greater than that for the least degree of the offense, irrespective of the proven value.

510

When we turn to the allegations of this specification, we have no difficulty in concluding that any reasonable person would reach the conclusion that the items mentioned in the pleadings as having been stolen by Turner had some value. It would be incredible to find otherwise. When we consider the large number of watches, cameras, rings, electric razors, cigarette lighters, pen and pencil sets, and watch bands described in the specification, in the light of our knowledge of the material things valued by mankind, we have no alternative other than to hold they would have some value in the eyes of every rational man. However, because the Government failed to allege any value, we are required to limit the offense, for punishment purposes, to the lowest degree of larceny. That would allow a penalty of only three months' confinement for the offense of accessory after the fact.

## VI

Defense counsel next attacks the sufficiency of the evidence to establish that the accused possessed a false ration book with an intent to deceive. Although not argued here, we will assume that a ration book, without which the purchase of scarce post exchange items is not authorized, constitutes a public document, just as did the ration books in widespread use during World War II. Davis v United States, 328 US 582, 66 S Ct 1256, 90 L ed 1453 (1946). Thus the wrongful possession of such a book with the requisite intent would amount to as serious an offense as the possession of any other false military pass or permit. But that assumption marks the beginning of our inquiry, not its end.

In United States v Karl, supra, we held that intent to deceive is an element of offenses in connection with military passes or permits in those cases where it is alleged that the accused used or had in his possession, a false or unauthorized pass. Later, in United States v Blue, 3 USCMA 550, 13 CMR 106, we held that the mere wrongful possession of a false pass, absent any intent to deceive, was no more than a disorder.

In this case, the accused was apprehended in connection with another offense and searched. Two ration books in his name were found on his person, and he admitted that one of them was a forgery. But there is nothing to indicate that he ever used the false book in any way. The book itself speaks to the contrary, for no coupons had been removed therefrom, even though it purportedly had been issued some six weeks prior to the apprehension. It was not the kind of instrument which normally could be used for identification, and the record is devoid of a showing of any exceptional circumstances. We must not be understood as holding that the accused must be caught in the very act of using the false instrument to make out an intent to deceive as such an intent may be shown in many ways. But here, there is no evidence of anything other than a simple wrongful possession, and for the crime alleged, that is not enough.

Because the evidence is insufficient to establish an intent to deceive, under this specification we may properly affirm only the disorder of wrongfully possessing a false ration book, punishable by not more than four months' confinement.

## VII

Lastly, we come to the question of the legality of the sentence imposed and approved in this case. The only form of punishment which need concern us is the term of confinement, for the propriety of the other parts of the sentence is not attacked. The maximum sentence for each of the offenses is as follows: selling Government property worth less than $20.00, six months; larceny of a pistol worth between $20.00 and $50.00, one year; theft of coffee worth less than $20.00, six months; accessory after the fact of larceny of property of some value less than $20.00, three months; and a mere disorder, four months. Thus the total maximum permissible term of confinement here is two years and seven months, substantially less than the sentence pres-

ently outstanding. To that extent, the sentence is illegal, and we may not affirm.

The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Navy for reference to a board of review. The sentence must be reconsidered in the light of the views we have expressed herein.

Judge BROSMAN concurs.

QUINN, Chief Judge (concurring):

I concur.

However, I think it appropriate to call the attention of law enforcement officers to Judge Sanborn's statement in Butts v United States, 273 F 35, 38 (CA8th Cir) (1921) (cited with approval by the United States Supreme Court in Sorrells v United States, 287 US 435, 444, 77 L ed 413, 53 S Ct 210), "The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it." A natural corollary to that statement is that law enforcement officers should endeavor to prevent a lesser offense from developing into a major crime.