UNITED STATES, Appellee

v

JOHN E. COLEMAN, Specialist Third Class, U. S. Army, Appellant

6 USCMA 773, 21 CMR 95

*First Lieutenant Gerald G. Barton* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James M. Scott.*
*First Lieutenant Robert L. Taylor* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial in Germany convicted the accused of four specifications of forgery, in violation of Article 123, Uniform Code of Military Justice, 50 USC § 717, and sentenced him to a dishonorable discharge, total forfeitures and confinement at hard labor for one year. The findings of guilty and the sentence were approved by the convening authority and affirmed by a board of review. We granted review to determine whether the law officer erred in failing to instruct the court-martial in accordance with defense counsel's request.

The evidence shows that Electrician's Mate Second Class James A. Sievers purchased a number of traveler's checks at the American Express Company Branch in Marseilles. In the upper left hand corner of the checks he signed his name under the words "WHEN COUNTERSIGNED BELOW WITH THIS SIGNATURE." A few days later he lost $190.00 in checks somewhere between Strasburg and Munich, Germany. The checks were found by M. W. Pfoertsch. In turn they were passed to a Mr. Karl M. Ament, Pfoertsch's employer, and from him to Mrs. Betty Wenning for delivery to the accused. According to Mrs. Wenning when she gave the checks to the accused she told him an American had had an automobile repair job and that he "did not have time to cash the checks himself and gave them to this garageman." She also told him that if he

cashed the checks he could keep 50 per cent of the proceeds.

On January 15, 1955, the accused cashed a $50.00 and a $10.00 check at the American Express Company Branch in Nurnburg, Germany. His name had been written over Sievers' signature in the upper left corner when he presented the checks for payment. In the bank teller's presence the accused signed his name at the appropriate place for countersignature at the bottom of the checks. Two days later the accused again appeared at the American Express Company office. He presented four checks for payment. In watching the accused sign his name the teller became suspicious. He checked the file of "Lost and Stolen" checks and determined that the numbers of the checks presented by the accused were listed. He informed the accused of the listing and the accused immediately left. A short time later he was apprehended.

The accused did not testify at the trial. However, the pretrial statement which he gave to the Criminal Investigation Detachment was admitted in evidence. In pertinent part it reads as follows:

"On 14 Jan 1955 . . . a German female known to me only by the name Betty . . . gave me three (3) $10.00, three (3) $20.00 and two (2) $50.00 Travelers Checks and asked me to try to cash them. I asked Betty where she got the checks and she told me that a German male friend of hers gave them to her to see if

she could get them cashed. Betty told me if I could get them cashed her friend would give me half of the money. The name at the top of the Checks had been erased but it looked like the name James A. Sievers or Silvers had been on them before. Betty told me that a soldier had given the Checks to her friend for a debt that he owed him, but she did not know the soldier's name. When I returned to my billets . . . I signed all of the Checks with my name, over top of the name that had been there. On Sat, afternoon, 15 Jan 1955, I cashed one (1) $50.00 and one (1) $10.00 Check at the American Express Office at the Americana Club. I bought $50.00 worth of DM and gave 100 of them to Betty to give to her friend. The rest of the money I kept. On 17 Jan 1955 . . . I attempted to cash four (4) more of the Checks . . . The teller . . . told me that they had been reported stolen . . . and told me that the C. I. D. would want to talk to me. After the teller told me that, I left and went back to the Company."

At the close of the evidence individual defense counsel presented the following proposed instruction to the law officer:

"There is evidence before the court that the accused was told the checks were given by the owner for the repair of a vehicle. If the court should find that the accused had acted in that belief, then the accused had no intent to defraud, even if the court should find that he altered and uttered the checks, and he must be acquitted of all specifications and the charge."

The law officer did not give the instruction in the form requested. Instead he advised the court as follows:

"Now, there is evidence in this case that the accused was told that these checks were given as payment for services on an automobile. Now, in considering this instruction or proof of intent to defraud you should consider that evidence, and all other evidence in this case, on this question of intent."

The accused now contends that the law officer's instruction did not adequately delineate the defense of honest mistake of fact. The difficulty with this contention is that the evidence does not reasonably raise the defense of honest mistake of fact. Assuming that the accused was informed that the checks had been received as payment for repairs on an automobile, that information does not answer the critical question of whether he honestly believed the representation. The accused's pretrial statement gives no indication whatever of an honest purpose in accepting, signing, and cashing the checks. On the contrary, it clearly implies an awareness that the transaction was illegitimate. The face of each check indicates that it is negotiated by countersignature at the bottom. According to the accused, however, not only was there no countersignature but the original signature had been partially erased. If that circumstance was not by itself sufficient to put him on guard, the offer of 50 percent of the proceeds was certainly so unusual as to indicate that there was more to the cashing of the checks than was represented to him. See United States v DeMaria, 6 USCMA 585, 20 CMR 301. Moreover, although the accused had been given all of the checks he did not attempt to cash them at the same time. This would have been the natural thing to do if he believed that the transaction was legitimate. Finally, when informed that the checks were on the "Lost or Stolen" list he immediately left the bank. Considering all of the circumstances, we are of the opinion that the evidence does not reasonably raise an issue of honest mistake as to the legitimate acquisition of the checks.

The decision of the board of review is affirmed.

Judge LATIMER concurs.