UNITED STATES, Appellee

v

WILLIAM R. MEADOWS, Corporal, U. S. Army, Appellant

7 USCMA 52, 21 CMR 178

No. 7621

Decided May 4, 1956

*First Lieutenant Jerome H. Gerber* argued the cause for Appellant, Accused. With him on the brief was *Major Edwin Doran.*

*First Lieutenant Arnold I. Burns* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

ROBERT E. QUINN, Chief Judge:

A board of review affirmed the accused's conviction for larceny of the sum of $25.00, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715, and failure to obey a Far East Command general order, in violation of Article 92, Uniform Code of Military Justice, 50 USC § 686. We granted review to consider two errors assigned by the accused.

Special Instruction No. 4, Headquarters Far East Command, prohibits the possession of certain in- █ struments such as, syringes and hypodermic needles "except as authorized by proper authority for medical purposes." On January 22, 1955, during an early morning "shake down" inspection a cake container containing a glass syringe and six hypodermic needles was taken from the accused's foot locker. On this appeal the accused contends that the evidence reasonably raises the issue of mistake of fact upon which the law officer should have instructed the court-martial. See United States v Cavett, 6 USCMA 235, 19 CMR 361.

At the trial the accused testified that he received the syringe and needles from Sergeant H. L. Crosby, the company senior aid man. Although Sergeant Crosby denied giving these devices to the accused, there is substantial evidence to corroborate the accused's account. However, there is no evidence from which it can reasonably be inferred that the accused honestly believed that Sergeant Crosby legitimately acquired them from "proper authority for medicinal purposes." On the contrary the evidence compellingly shows that the accused knew that his acquisition of the implements was improper.

In his testimony and in a sworn pretrial statement admitted in evidence the accused said that he received the syringe and needles for the purpose of giving Sergeant Crosby penicillin injections for a venereal disease. Army Regulations make it the duty of an individual who "has reason to believe that he may have contracted" a venereal disease to report that fact to his commanding officer in order that "proper medical treatment may be given." AR 40–210, paragraph 23f(1). Although Sergeant Crosby was the company aid man, the accused was not connected in any way with the medical facilities of the company or the battalion. The surrounding circumstances clearly indicate that he knew that his treatment of Sergeant Crosby was unauthorized. In his pretrial statement he said that he personally obtained the penicillin and did not "care to relate where . . . [he] got it." The label on the bottle of penicillin which was admitted in evidence as a defense exhibit bears Japanese characters and it is apparently of Japanese origin. The accused also said that on January 12th he administered the first injection with a "Japanese syringe." It was not until the next day that Sergeant Crosby gave him the syringe and needles which were found in his foot locker. Assuming that the accused believed that these instruments came from the medical equipment of the company, the evidence shows that the accused did not believe that they were properly acquired. See United States v Tamas, 6 USCMA 502, 507, 20 CMR 218. Both injections were given under conditions far different from the normal medical practices for treatment of a disease of the type that Crosby purportedly had. One injection was administered in an "open field" and the other in the "switchboard tent."

Finally, it appears that when the "shake down" inspection was in progress the accused personally removed the cake tin from his foot locker. He told Master Sergeant Rowe, who was conducting the inspection, that "there was nothing in it." However, Sergeant Rowe insisted on examining the container and the accused gave it to him. The evidence, therefore, indicates that the accused had a complete awareness that neither he nor Sergeant Crosby could properly possess the syringe and hypodermic needles. Consequently there was no issue as to an honest mistake of fact in regard to Sergeant Crosby's authority and the law officer

54

was not required to give an instruction on the matter. United States v Coleman, 6 USCMA 773, 21 CMR 95.

In his second assignment of error, the accused contends that he was prejudiced by statements of several members of the court-martial. In substance the members questioned the "importance of how this equipment came into the possession of the accused" because "mere possession of an instrument of this kind is a violation" of the Far East Command order. Undeniably, the court members entertained a mistaken idea of the legal defenses to the offense charged. United States v Greenwood, 6 USCMA 209, 19 CMR 335. The important question, however, is not whether the members were merely laboring under a misapprehension as to the law but whether their erroneous interpretation influenced their deliberation on the guilt or innocence of the accused. United States v Dein, 5 USCMA 44, 17 CMR 44. Since the evidence does not reasonably raise an issue of honest mistake of fact as a defense, the error did not harm the accused. Cf. United States v Smith, 6 USCMA 521, 20 CMR 237.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring in the result) :

I concur in the result.

It appears to me this case involves only a claimed ignorance of the law, and I need only say that, under the facts of this case, that theory does not compel the giving of an instruction. The regulation violated was as follows:

"4. Instruments. No person subject to military law under Article 2 of the Uniform Code of Military Justice shall, except as authorized by proper authority for medicinal purposes, introduce into any area, installation, aircraft, or vessel of this command; use, or have on his person, or in his possession or custody, at any time or place, any instrument or device which may be used to administer or dispense habit-forming drugs or nervous system stimulants, such as, but not limited to, syringes, hypodermic needles, or ampoules designed for such drugs or stimulant. A violation of this paragraph is punishable under Article 92 of the Uniform Code of Military Justice."

Had the accused known of the regulation and accepted the needles and syringe from Sergeant Crosby because of a belief that the Sergeant fell within the category of persons designated in the regulation as "proper authority" to authorize such possession, then a defense might have been raised. But the accused testified he was unaware of the regulation, and that he did not know that possession of such instruments was illegal. Assuming his story to be believable, the court-martial could nevertheless base a finding of guilt on the theory that this accused may be charged with knowledge of the terms of the regulation. Manual for Courts-Martial, United States, 1951, paragraph 154a (4), page 295. In that event, the accused could be brought within the preferred class if the Sergeant was authorized to direct possession. However, because the authority did not exist, in law or in fact, the accused has no defense. When he conceded he had possession of instruments of sinister significance, to escape a finding of guilt he had to prove that his custody and control fell within the exception set out in the regulation. See United States v Gohagen, 2 USCMA 175, 7 CMR 51. He could not do that by relying on a claimed ignorance of the law. If an instruction on the theory of ignorance of law is ever required, it was not necessitated by the facts of this case.

Judge FERGUSON did not participate in the decision in this case.