## UNITED STATES

### v.

**Senior Airman John B. KLINK, FR 373–64–8080, United States Air Force.**

### ACM 23527.

U. S. Air Force Court of Military Review.

Sentence Adjudged 1 April, 1982.

Decided 22 Oct. 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Lieutenant Colonel Andrew J. Adams, Jr., and Major George D. Cato.

Before KASTL, RAICHLE, and SNYDER, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

A and B are thieves. They conspire with C and D, who will drive the "getaway car" and "fence" the property. The group plans to remove government property from certain Air Force buildings and carry it away. Unfortunately for A and B, the other two parties are government operatives.

This is the basic fact situation confronting us in the instant case.[1] The accused—in

---

1. The accused was tried for conspiracy, larceny, wrongful appropriation, and unlawful entry, violations of Articles 81, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921 and 934. As to the larceny of-

fenses, he pleaded guilty to attempted larceny. He was found guilty of all offenses by a general court-martial, military judge sitting alone.

The sentence as approved extends to a bad conduct discharge, confinement at hard labor

the role of A—joined with B, C and D in a conspiracy to steal government property. To this end, A and B entered warehouses on Edwards Air Force Base, California. A carried the items to the warehouse door and out onto the adjacent dock area, prior to loading them into a vehicle; A then joined C, who was driving the vehicle, and drove away.

The accused pleaded guilty to attempted larceny but was found guilty of larceny itself. Citing *United States v. Sneed,* 17 U.S.C.M.A. 451, 38 C.M.R. 249 (1968), he insists that he is innocent of larceny since the government never lost control over its property, due to the continuing possessory role of its agent-informers, C and D.

The specific question before us is whether the accused is guilty of larceny. His contention that he is guilty only of *attempted* larceny requires analysis of a little-known potential defense first broached by the Court of Military Appeals in *United States v. Buck,* 3 U.S.C.M.A. 341, 12 C.M.R. 97 (1953). In that case the accused entered a supply office and suggested to a sergeant assigned there that the accused wanted to illegally obtain chevrons; the sergeant reported the matter and was directed to give the accused the requested items. The Court noted three situations wherein persons in authority might lend apparent support to commission of a crime in order to catch a culprit: (1) An individual intent upon a crime is afforded "ample opportunity to rush to his own destruction, while the authorities, having set a trap to catch him, smooth his path, but do not otherwise accelerate his progress." (2) The individual has planned the crime, but the authorities overreach, becoming deeply involved when they uncover the plan—even to the point of negativing an essential element of the crime. (3) An otherwise innocent individual is entrapped into committing crimes first concocted by the authorities. *United States v. Buck, supra,* at 99–100.

The first and second categories are involved here. In regard to those situations, as the Court explained in *Buck,* an owner may under certain circumstances become so involved with catching a thief that he virtually consents to the taking. In such a circumstance, no true larceny can occur. *United States v. Buck, supra,* at 100–101. See generally, 50 Am.Jur.2d Larceny § 24 (1970); 52A C.J.S. Larceny § 24 (1968); Annot., 10 A.L.R.3d 1121, 1129 (1966). *See, Johnson v. State,* 255 Ind. 539, 266 N.E.2d 57, 60 (1971) and *Jarrott v. State,* 108 Tex. Cr.R. 427, 1 S.W.2d 619, 621 (1927). (extensive gathering of older cases).

The *Buck* analysis was refined in later cases. *United States v. Tamas,* 6 U.S.C.M.A. 502, 20 C.M.R. 218 (1955) (accused asked J to obtain a government-issue pistol; J notified Marine Corps authorities who instructed J to comply); *United States v. Cassey,* 14 U.S.C.M.A. 558, 34 C.M.R. 338 (1964) (accused solicited individual to supply him with government sheets which he would turn over to a third person to sell; the proposition reported to government authorities); *United States v. McLeary,* 2 M.J. 660 (A.F.C.M.R.1976), pet. den. 2 M.J. 199 (accused and two others agree to steal government property from Clark Air Base, Philippines).

██ A reading of these cases reveals two reasons why the *Buck*-type defense will seldom succeed in a court-martial for larceny of government property. In the first place, neither government authorities nor pretended confederates possess power to *consent* to a taking of government owned property. *United States v. Buck, supra* at 101; *United States v. Cassey, supra,* at 341–342. In the second place, after the agent-informant acts, the slightest asportation by the accused will establish a wrongful taking.[2] *United States v. Tamas, supra,* at 224; *United States v. McLeary, supra,* at 662.

for 12 months, total forfeitures of all pay and allowances, and reduction to airman basic.

**2.** Any movement of the property or exercise of dominion over it, accompanied by the requisite intent, is sufficient to find the element of asportation; the slightest change of position is suffi-

cient. 50 Am.Jur.2d Larceny § 16 (1970); 3 Wharton's Criminal Law § 378 (1980); *see also, State v. Fischer,* 52 Ohio App.2d 53, 6 Ohio Ops.3d 40, 368 N.E.2d 332, 333–334 (1977).

A rare illustration of a successful defense in this vein occurred in *United States v. Sneed, supra.* The accused proposed to steal government property and caused another to remove certain items from a supply depot building and load them on a truck driven by a third man. The two apparent accomplices had informed the authorities of the accused's proposal and pretended to cooperate. The Court of Military Appeals held that, under these unique circumstances, the accused never acquired possession, dominion, or control of the property. The acts of the agent-informants were not *per se* a wrongful taking or asportation and thus the items in question were never out of government control. The Court distinguished *United States v. Tamas, supra,* by saying:

> The point of difference between *Tamas* and this case is that the accused here never acquired possession of the Government's property. At all times the property remained in possession of the feigned accomplices.

*United States v. Sneed, supra* at 253.

■ With such background, we turn to the instant case. We affirm, believing *Sneed* is inapposite. In that case, Sergeant Sneed himself never took but merely directed the actions of the other parties—who had no authority to turn over the government's property; moreover, Sneed himself never asported. Accordingly, at all times the property remained in possession of the supposed accomplices. Here, in contrast, the accused actually took and asported the goods in question. Specifically, he and the other thief removed the items from a government warehouse, carried them onto a concrete dock, loaded them into the "getaway vehicle," and helped drive them away. In our judgment, all of the basic requirements for a larceny and asportation, coupled with the requisite intent to permanently deprive, were met.[3] Accordingly, we find no error in a conviction for larceny. *United States v. Buck* and *United States v. Tamas,* both *supra.*

The findings of guilty and sentence are AFFIRMED.

RAICHLE and SNYDER, Judges, concur.

---

3. The parties stipulated that the accused was under government surveillance—we assume by other agents—during his entire wrongdoing. The defense suggests that the government never lost actual possession. We disagree, finding both taking and asportation. We regard the accused's activities in taking and asporting the property sufficient to constitute larceny, despite government surveillance of the entire operation. *United States v. Cassey,* 14 U.S.C. M.A. 558, 34 C.M.R. 338, 343 (1964).