UNITED STATES, Appellee

v

STEVEN G. ROCK, Airman Second Class, U. S. Air Force, Appellant

9 USCMA 503, 26 CMR 283

No. 10,864

Decided August 1, 1958

*Lieutenant Colonel Robert O. Rollman* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*
*Lieutenant Colonel James R. Thorn* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Two specifications charging violations of Article 134, Uniform Code of Military Justice, 10 USC § 934, alleged that the accused, on April 27, 1957, had wrongfully in his possession, and wrongfully and unlawfully sold to another, five marihuana cigarettes. The

504

prosecution's case established that the accused delivered the marihuana cigarettes to one Airman Baker in exchange for five previously marked one dollar bills and that shortly thereafter the accused was apprehended with four of the marked bills in his possession. The defense was that the accused had been entrapped by Government agents to possess and sell the contraband merchandise.

The events leading up to the accused's apprehension took place in the following sequence. On April 18, 1957, Baker and the accused, who was the senior airman of the two, were on mobile patrol as air policemen. While discussing various ways of getting drunk, the accused asked Baker if he had ever tried using habit-forming drugs. He received a negative response, and then Baker was asked whether he objected if others did so. The latter replied it was their own business, whereupon the accused asked if Baker minded if he indulged. Baker again said no and the accused drew a box from his fatigues, removed a cigarette and smoked it. The accused judicially admitted this cigarette contained marihuana, and he did not dispute Baker's testimony that he offered Baker an opportunity to join him in the experience. The next day, Baker reported the incident to the Air Police Investigation Section, and that report resulted in his being interviewed by Criminal Investigation Division Agent Biase and two subordinates. Although the record is unclear with whom the idea originated, a plan was conceived at this meeting that Baker should solicit the accused to sell him marihuana cigarettes. Alternatively, it was agreed at the meeting that if Baker was positive the accused had marihuana cigarettes in his possession at any time, he was to inform Biase and apprehension would ensue. To further the plan, Baker was placed on patrol with the accused that evening. Again the conversation between the two drifted to means of getting drunk, and Baker then asked the accused to obtain some cigarettes for him. The accused replied that procurement was possible; that he had available to him one of the best sources of supply in Albuquerque; and that the cigarettes would cost Baker a dollar apiece. Baker told the accused to purchase as many as he could. Delivery was not forthcoming, and on April 23 the two were again on patrol. During their tour of duty, the accused smoked another marihuana cigarette, and Baker again requested the accused to obtain some for him. There is no evidence of the accused's response to that solicitation, but on the next day the request was repeated and accused replied that he was low on funds and Baker would have to wait until payday. When Baker stated he could not wait as he desired to leave for home, the accused promised earlier delivery. A couple of days later, according to Baker, he asked the accused whether he had procured the cigarettes as yet and the accused said he had not. On April 27, Baker again inquired and was told by the accused that the police were "too hot downtown." However, later that day the accused informed Baker he could comply with the request. Baker relayed this news to the investigators, who furnished him the marked bills. The accused arranged a meeting place for the transfer and Baker, under surveillance, kept the appointment with the results already described.

The court members were instructed, with considerable care, upon the defense of entrapment, and they resolved that issue against the accused when they convicted him as charged. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for two years. Intermediate appellate authorities affirmed, and this Court granted his petition for review.

The first issue presented is whether the conduct of the Government agents constituted entrapment. At the threshold, we are met with the argument that Baker, and through him other law enforcement officers of the Government, failed in their duty, in the words of Chief Judge Quinn, concurring in United States v Tamas, 6 USCMA 502, 20 CMR 218, to "endeavor to prevent a lesser offense from developing into a major crime." The argument is based on the premise that Baker was armed, had radio communication from the

patrol car to his Headquarters, and possessed the authority to arrest the accused on suspicion of possession and use of marihuana. It must be remembered, however, that the accused was the senior member of the patrol and, had the Government proceeded without evidence corroborating Baker's story, proof would have been difficult and conviction doubtful. At best, the Government's case would then have depended upon accused's admissions and Baker's qualifications to identify the drug. Baker had never used marihuana, and refused the accused's offer to try one of his cigarettes, and neither claimed nor demonstrated any expertise in the detection of narcotics or in judgment of a user's symptomatic reactions. Therefore, it would be absurd to give the law enforcement officers in this setting the alternative of either making the arrest for possession and use of marihuana on Baker's uncorroborated testimony, or closing off the possibility of the accused's later arrest for the sale or possession of that substance. We see nothing untoward in the Government waiting, in a situation in which there is doubtful or uncertain proof of criminal conduct, for a case of clear criminality to develop, before undertaking the accused's arrest with substantial evidence of his guilt.

In light of the complete instructional coverage the law officer gave to the court, the real problem in this case is whether the issue of entrapment narrows to one of law. Unless it does, the accused must fail on this appeal, for the question was submitted to the court for decision factually under appropriate guidance, and it was resolved favorably to the Government. And, contrary to the accused's assertion, our reading of the record causes us to conclude that the law officer was eminently correct in his evaluation of the issue. Even a cursory reading of the record will establish that there is substantial evidence to justify a belief or suspicion by the officers of the law that the accused was dealing in narcotics. United States v McGlenn, 8 USCMA 286, 24 CMR 96. Baker was not a user of habit-forming drugs, and the doorway to that subject was opened by the accused.

When he first mentioned the subject of using narcotics to Baker, the latter evinced no interest whatever. Despite this fact, the accused offered to start Baker off on a course of conduct repugnant to the best interests of society. By inquiry, he ascertained that Baker did not wish to acquire the habit, but had no qualms about others indulging in the vice. Thereupon the accused, by smoking a cigarette, set the stage for further inquiry into his underworld activity. It is beyond question that at that time Baker could reasonably conclude that the accused possessed, used, and solicited others to use dope. When he imparted the conversation and actions of the accused to the investigators, they in turn had the same reasonable basis for believing the accused was a seller of narcotics. The difference between the offenses in this setting is not of grave moment for, as we said in United States v Hawkins, 6 USCMA 135, 19 CMR 261: "It is clear that entrapment is not a defense if the accused was already engaged in an existing course of similar criminal conduct."

In United States v Perkins, 190 F2d 49 (CA 7th Cir) (1951), the Court of Appeals for the 7th Circuit was presented with a somewhat similar contention. There the court stated:

"In the case at bar there was no testimony that Riley had previously engaged in the sale of narcotics, but he was (at least prior to his jail sentence) an addict and had embarked on conduct morally indistinguishable. United States v. Becker, supra, 62 F2d at page 1009. When Riley was approached by Sullivan he quickly got down to the financial aspects of the transaction and then promptly contacted Perkins. Here we have 'ready complaisance.'"

It is undisputed that Baker first suggested a sale and at later times asked the accused about his progress in the matter of procuring the marihuana. However, this was not illegal deception, for at no time did Baker lure the accused into performing an act which was questioned by the latter. Mere requests or suggestions to obtain contraband goods are well within bounds

which the law countenances. Butler v United States, 191 F2d 433 (CA 4th Cir) (1951). Furthermore, the tenor of the conversation and accused's contemporaneous conduct led Baker to believe the accused was trafficking in marihuana, and the very first time Baker broached the subject of a sale, the accused heartily agreed it was a possibility since he had a good source of supply nearby. Moreover, he quickly got down to the financial aspects of the transaction and fixed a price. To Baker's subsequent approaches, the record is either silent or shows unequivocally that the accused did not resist the overtures and that he was not a man, otherwise innocent and law-abiding, who, but for repeated solicitation, would not have engaged in the illicit trafficking with narcotics. He did not once refuse or demonstrate the slightest bit of reluctance toward making a sale. He was all too ready to quote the price of the commodity to be ignorant of the going rate, and he exhibited at all times a willingness to violate the law. United States v Chiarella, 184 F2d 903 (CA 2d Cir) (1950); United States v Becker, 62 F2d 1007 (CA 2d Cir) (1933); compare United States v Klosterman, 248 F2d 191 (CA 3d Cir) (1957). From all of the foregoing, it should be apparent there was ample unrebutted testimony of record to support the finding that the accused was not entrapped to make a sale. But, in addition, there remains the offense of possession of marihuana, and his pretrial statement discloses he had possessed the contraband articles for some time prior to the time he now asserts he made the purchase for Baker. His repeated possession and use of the narcotic-filled cigarettes, when coupled with his prior statements that he did not find it necessary to obtain the cigarettes from third parties as he had them on his person and that he sold them to Baker because he was without funds, show clearly his possession was the result of acting individually in his own behalf and not as a conduit from an unknown seller for Baker.

The next issue presented for disposition is multiplicity. Appellate defense contend the accused was sentenced for both the sale and possession of the marihuana cigarettes, though these offenses were merely different aspects of a single transaction. Even though this assertion may be contrary to a reasonable construction of accused's pretrial statement, we need not dwell at length on this issue. The Government—although contending emphatically that the offenses are not multiplicious; Albrecht v United States, 273 US 1, 71 L ed 505, 47 S Ct 250 (1927); United States v Mulligan, 67 F2d 321 (CA 2d Cir) (1933); see also United States v McVey, 4 USCMA 167, 15 CMR 167—is willing to concede arguendo that the offenses alleged in this case may be considered unitary for purposes of punishment. Having made the concession, it contends the prejudicial effect of the assumed error has been purged by the action of reviewing authorities. If the sentence is correct as a matter of law—and the sentence adjudged by the court-martial in this case was well within permissible limits for either conviction—it is well-settled that intermediate reviewing authorities may remove the effect of any possible prejudice due to multiplicity. United States v Dandaneau, 5 USCMA 462, 18 CMR 86. In his review of this case, the staff judge advocate recognized the possibility of the two offenses being considered as one, and he treated the situation in the following manner:

"Assuming, for the purposes of argument only, that the offenses were not severable, and as the court was not instructed to consider the two offenses as unitary in determining an appropriate sentence, it must be presumed that the sentence was based on separate specifications of which the accused was convicted. . . . Under that hypothesis the sentence may be re-examined to determine its propriety. The sentence does not appear to be incorrect as a matter of law."

And in another place, dealing specifically with sentence, he stated:

"The accused stands convicted of possession and sale of marihuana

**507**

cigarettes. He could have received a sentence, assuming the offenses as separate, of dishonorable discharge, total forfeiture and confinement at hard labor for ten years. Assuming the offenses as not separate, the maximum punishment would be dishonorable discharge, total forfeitures, and confinement at hard labor for five years. While his previous convictions are minor in nature, they do not indicate that he has very high regard for obedience to laws and directives. Even considering the offenses as not severable, it appears that it is appropriate for the type of misconduct which gave rise to the charge."

It is thus manifest that the staff judge advocate effected a determination of the appropriateness of sentence based upon his assumption that the charge and specifications of this case were multiplicious. It is likewise evident he placed the question squarely before the convening authority. Accordingly, it is reasonable to find that that arbiter affirmed the sentence well knowing his consideration must be limited to one aspect of the criminal transaction.

The board of review too noticed and passed on the question, as follows:

"As we have indicated, we do not consider the offenses alleged in this case to be multiplicious. However, even if they were unitary for the purposes of punishment no prejudice to any substantial rights of accused has been sustained because it appears that the convening authority—per the advice of his Staff Judge Advocate— assessed the sentence for propriety and concluded that even if the two offenses were in fact one for the purposes of punishment the sentence adjudged was appropriate."

We conclude from the foregoing that whatever prejudice may have arisen from the law officer's instructional omission has been purged by reviewing authorities. United States v Crusoe, 3 USCMA 793, 14 CMR 211; United States v Reiner, 8 USCMA 101, 23 CMR 325; United States v Peters, 8 USCMA 520, 25 CMR 24.

The final issue raised is whether the evidence is sufficient to support the finding of a sale. Appellate defense claim the accused's testimony that he made no profit from his transaction with Baker established that he was Baker's procuring agent rather than vendor. There was no evidence of the usual sale price for the drug, and the court was not bound to accept accused's statement that his efforts were those of an errand boy, particularly in view of his prior admissions. His pretrial statement, which was admitted into evidence, demonstrates he was no mere conduit from seller to buyer. In response to the question, "Did you get the marihuana cigarettes for A/3c BAKER?" he replied, "I did not have to obtain them, for I had them in my possession all the time." To another question, "Why did you sell the five (5) marihuana cigarettes to BAKER?" he answered, "Because he asked me for some, and I was broke." From this evidence, the court could certainly find that he was serving his own financial or personal interests in dispensing marihuana.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge FERGUSON concurs only in the result.