UNITED STATES

v.

Sergeant Leonard L. CURTIS, FR 160–44–3810 Headquarters, 1st Composite Support Group Headquarters Command USAF.

**ACM 21981.**

U. S. Air Force Court of Military Review.

11 May 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Captain David A. Bateman.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major John A. Cutts III.

Before ROBERTS, ORSER and SANDERS, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a general court-martial composed of a military judge sitting alone, the accused, despite pleas of not guilty, was convicted of one offense each of wrongful possession and sale of heroin in violation of Article 134, 10 U.S.C. § 934, Uniform Code of Military Justice, and wrongful possession and sale of cocaine in violation of Article 92 of the Code. The approved sentence provides for a bad conduct discharge, confinement at hard labor for one year, forfeiture of $240.00 per month for 12 months and reduction to airman basic.

Appellate defense counsel invite our attention to numerous assertions of error by trial defense counsel and elaborate on certain of them in their brief to this Court. In our judgment, the errors so assigned are either without merit or were considered in the review of the staff judge advocate and properly resolved adversely to the accused. Though we concur with the staff judge advocate's conclusions, we deem it appropriate to address those errors selected for emphasis by appellate defense counsel.

█ At trial, defense counsel unsuccessfully moved for appropriate relief alleging that three of the offenses were improperly charged under Article 134, Code, supra, instead of Article 92. Before this Court, appellate defense counsel (citing *sua sponte* grants of review by the United States Court of Military Appeals in *United States v. McBride*, Docket No. 31,044, 10 October 1975, as well as numerous other cases) contend the accused was denied equal protection and due process of law by virtue of the Article 134 manner of charging some of the offenses.

Presently, the reasoning and holding in the case of *United States v. Walters*, 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971), is dispositive of this issue adversely to the accused. Moreover, regardless of the ultimate disposition by the Court of Military Appeals of the cases now before it, we are here convinced the accused could not have suffered prejudicial harm. Though, in theory, there was a substantial difference in the maximum imposable punishment depending on which article of the Code was charged, the sentence actually imposed by the military judge for the Article 134 violations (plus separately charged and separately punishable Article 92 violations) was significantly less than the maximum authorized under either article. The offenses of which the accused stands convicted are serious and warrant the punishment imposed. We see no risk the military judge was influenced in sentencing, or the convening authority in his approval action, by the theoretically greater punishment exposure under Article 134 than under Article 92. *United States v. Veilleux*, 1 M.J. 811 (A.F.C.M.R.1976).

The defense at trial also moved to dismiss three of the offenses on grounds of lack of jurisdiction. Counsel argued that the offenses allegedly occurred off-base, were properly cognizable in the civilian courts of the state in which they occurred through indictment by grand jury and trial by jury, and were not service-connected. Appellate defense counsel bolster this assignment by calling our attention to numerous *sua sponte* grants of review on this issue now pending before the Court of Military Appeals (See, e. g., *United States v. Clay*, Docket No. 31,108, 7 Nov. 1975).

As with the issue previously discussed, decided cases of the Court of Military Appeals are currently dispositive of this matter adversely to the accused. *Rainville v. Lee*, 22 U.S.C.M.A. 464, 47 C.M.R. 554 (1973); *United States v. Sexton*, 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974). In the case at hand we adhere to the sound reasoning and holdings of the cited cases. These decisions presently express the law in this area and we perceive no basis for departure therefrom.

In their last assertion of error, appellate defense counsel contend, in essence, that the evidence is insufficient to establish the accused's guilt of the offense alleging wrongful sale of heroin. The evidence respecting this offense consisted of the testimony of Special Agent Roscoe of the Air Force Office of Special Investigations (OSI), a video tape recording which corroborated certain details of the agent's testimony, and a laboratory analysis of the substance involved which established it to be heroin.

Mr. Roscoe testified that on 30 June 1975, while posing as an out-of-town buyer of illicit drugs, he gained an introduction with the accused, a suspected dealer of narcotics, through an acquaintance, one Murphy. Upon being introduced, Roscoe informed the accused he was interested in buying either heroin or cocaine. The accused informed Roscoe he could obtain heroin for him but not cocaine. Roscoe testified he then asked what price he would have to pay for a one-fourth to one-half ounce quantity of the drug, and the accused replied the cost would be approximately $500.00. The two then agreed that the accused, accompanied by Murphy, would follow Roscoe to his off-base premises where the latter would give the accused $250.00. The accused was to ante $250.00 of his own funds, obtain the heroin, and deliver the drug to Roscoe. Upon delivery, Roscoe was to pay the accused the additional $250.00.

Initially everything proceeded as agreed. According to Roscoe, he gave the accused $250.00, whereupon he and Murphy departed and within three hours returned with two wrapped packets of what was subsequently determined to contain heroin. Murphy had physical possession of the heroin and placed it on a table in front of the agent. Roscoe then made an effort to open one of the packets. When he indicated he was having trouble doing so, the accused assisted and opened the packet for the agent.

At that point, Roscoe attempted to give the accused the additional $250.00 as earlier agreed, but the latter declined the money, stating, said Roscoe, that he preferred to retain half the heroin. The accused allegedly insisted such disposition was in keeping with the original bargain. He explained there were others on base who were waiting for him to bring the heroin to them. A debate then ensued between the parties and Roscoe eventually convinced the accused to leave the entire cache of heroin with him until such time as a "contact" of his could dilute the drug. The accused agreed to return to Roscoe's apartment approximately two hours later for final disposition of the heroin. Agent Roscoe further testified that both the accused and Murphy said they had "tested" the heroin and were of the opinion it was of extremely good quality. The accused is said to have remarked he could "step on" (dilute) the drug "nine times," and cautioned against permitting undiluted injections as that would probably be fatal to the recipient. Following this discussion, the accused and Murphy left Roscoe's apartment. When the accused returned about two hours later he was apprehended by agents of the OSI.

The defense contends that as a matter of law this evidence is insufficient to sustain the accused's conviction of wrongful sale of heroin. In their view, the accused made no sale of heroin to Roscoe in the accepted legal sense, but instead merely acted as a procuring agent for him in a transaction between the Government agent and the actual seller, a person whose identity remains undisclosed. We do not agree.

It is well settled law that a person who acts in a transaction solely as a procuring agent for a person who purchases drugs cannot incur criminal liability as a seller to that person. *United States v. Fruscella*, 21 U.S.C.M.A. 26, 44 C.M.R. 80, 81 (1971), and cases cited therein; *United States v. Suter*, 21 U.S.C.M.A. 510, 45 C.M.R. 284 (1972); *United States v. Henry*, 23 U.S.C.M.A. 70, 48 C.M.R. 541 (1974); *United States v. Maginley*, 32 C.M.R. 842 (A.F.B.R.1962), affirmed, 13 U.S.C.M.A. 445, 32 C.M.R. 445 (1963). In two of the leading cases on the subject, *Fruscella* and *Maginley*, both supra, the records were judged devoid of evidence

that the accused acted in any other capacity than as agents for the respective buyers.

In *Fruscella*, a Government informant contacted the accused and asked if he knew where he could get some marihuana. The accused replied he was planning to buy some for himself and stated he would obtain an additional quantity for the informant. The accused told the informant the price he would have to pay for the marihuana, the money was duly given to the accused, and he thereafter obtained the drug and delivered it to the informant. The facts in *Maginley* are quite similar. There, the Government informant was a member of a group of airmen, including the accused, who regularly smoked marihuana. The informant requested that the accused obtain some marihuana for him from a known and frequently used source of supply. He gave the accused six dollars, the customary price of three packages of marihuana when purchased from the source. In both cases, the Court determined the accused were simply agents who facilitated sales transactions between the real bargaining parties. In *United States v. Henry*, supra, the Court stated the applicable rule in the following language:

> When narcotics are obtained from a seller, at no profit, by an accused at the request of a government informer and for no other reason, there can be no conviction for selling narcotics to his principal. (Citations omitted.)

■ Turning to the facts at hand, the record clearly demonstrates the accused's participation in the heroin transaction was far more substantial and purposive than that of the mere messenger boys encountered in the cited cases. See *United States v. Maginley*, supra; *United States v. Rock*, 9 U.S.C.M.A. 503, 26 C.M.R. 283 (1958); *United States v. Suter*, supra. Granted, the record contains some indicia of an agency arrangement as opposed to a sale by the accused. For example, as pointed out by appellate defense counsel, there is no evidence the accused realized a profit. As a matter of fact, Mr. Roscoe opined, on the basis of his expertise concerning the street

price of drugs, that the accused made nothing on the sale. The profit factor, however, though admittedly probative on the issue of agency, is not alone decisive. See *United States v. Wampler*, 44 C.M.R. 638 (A.C.M.R. 1971), pet. denied, 21 U.S.C.M.A. 622, 44 C.M.R. 940 (1972); *United States v. Lewis*, 49 C.M.R. 734 (A.F.C.M.R.1975).

■ Here, Roscoe approached the accused for the purpose of buying drugs from him. Though the agent may have presumed the accused would have to tap some third party source to fill his order, his bargain nevertheless was with the accused. During the negotiations, the accused established the price Roscoe would have to pay for the quantity of heroin desired. The evidence does not reveal the actual source of the drug, or what, if any, business relationship existed between the accused and the source utilized. Our only insight into that aspect of the matter appears in the accused's statement to Roscoe that he was obliged to negotiate with his supplier to secure the heroin for the agreed-upon price of $500.00. As earlier recited, in spite of such alleged problem, the accused managed to obtain and deliver the heroin in a relatively short period of time.

The record further demonstrates the accused was far more knowledgeable concerning the quality of the drug than might be expected of a mere procuring agent. As seen, the accused admitted he had personally sampled the merchandise, vouched for its quality and cautioned against undiluted usage. Then too, upon delivery of the drug, the accused asserted a different understanding of the agreement between the parties than Roscoe's own recollection. As earlier indicated, the accused repudiated the original bargain and laid personal claim to half the heroin involved.

From this record we can only speculate as to what motivated the accused to supply heroin to Roscoe, a purported drug trafficker known to the accused only by virtue of an introduction by his acquaintance Murphy. Whatever the actual motivation, however, need not here detain us, for considering the circumstances as a whole, we are

satisfied the defense of agency is not even reasonably suggested. See *United States v. Hodge*, 48 C.M.R. 576 (A.F.C.M.R.1974), pet. denied, 48 C.M.R. 999 (1974). The evidence in totality convinces us, as it did the military judge, that the accused acted on his own behalf in a most aggressive pursuit of a heroin transaction.

One final matter requires our attention. In his closing argument on sentence, the trial counsel alluded to deterrence of others as the basis for his recommendation that, among other penalties, forfeiture of all pay and allowances and confinement at hard labor for five years be adjudged. In the very recent case of *United States v. Mosely* 1 M.J. 350, decided 19 March 1976, the Court of Military Appeals declared it error for a trial counsel to urge court members to consider the deterrent effect upon others as a basis to increase the sentence otherwise appropriate.

 Assuming in the present case that trial counsel's reference to deterrence was improper, upon careful evaluation we see no reasonable likelihood the remarks exerted any adverse influence on the sentence. *United States v. Mosely*, supra; *United States v. Peters*, 8 U.S.C.M.A. 520, 25 C.M.R. 24 (1951). The sentence imposed by the military judge, the earlier indicated bad conduct discharge, confinement at hard labor for one year, forfeiture of $240.00 per month for 12 months and reduction to airman basic, was far less than the maximum authorized, and significantly more lenient than urged by the trial counsel. This sentencing action demonstrates to our total satisfaction the military judge was not affected by the improper argument of trial counsel and the error was consequently rendered harmless.

For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

ROBERTS, Senior Judge, and SANDERS, Judge, concur.