UNITED STATES

v.

Captain James E. SIMMONS, 201–36–9360 1961st Communications Group Thirteenth Air Force (PACAF).

ACM 22140.

U. S. Air Force Court of Military Review.

Sentence Adjudged 22 Sept. 1976.

Decided 15 Feb. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Gilbert J. Regan.

Before LeTARTE, C. J., EARLY, Senior Judge, and FORAY, J.

## DECISION

EARLY, Senior Judge:

Tried by general court-martial, the accused was convicted, pursuant to his pleas, of two specifications of wrongfully transferring and one of wrongfully selling marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence extends to dismissal from the service.

In a single assignment of error, appellate defense counsel assert:

THE MILITARY JUDGE ERRED IN ACCEPTING THE APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 3 BECAUSE THE APPELLANT IMPLICITLY RAISED THE DEFENSE OF AGENCY DURING THE *CARE* IN-QUIRY AS TO THE SALE OF MARIHUANA.

We disagree.

During the providency inquiry,[1] after the military judge had read the elements of the offenses to the accused, this dialogue ensued:

MJ: Do you understand that your plea of guilty admits that these elements correctly describe what happened on those three occasions? Do you understand that?

ACC: Yes, I understand that.

MJ: Do you admit that that is what happened?

ACC: Not exactly, but close to it.

MJ: Well, "not exactly, but close to it" is not going to get the job done now. Where is it you have a problem?

(Accused conferring with defense counsel.)

ACC: Could you repeat the question, sir?

MJ: Do you admit that that is what happened, what's described in those elements?

ACC: Yes, sir.

.    .    .    .    .

MJ: Okay. Now you say you'd never gotten any marihuana for Airman Rowe [the Government informer] before?

ACC: No, sir.

MJ: Had you gotten some for other people?

ACC: The occasion never really arose where I had to, at that time.

MJ: Had you ever gotten any for other people before this, for other airmen?

ACC: At the time of this particular incident, no.

MJ: This is the first time you ever got some marihuana for another person?

(Accused conferring with defense counsel.)

ACC: For another airman.

MJ: For another airman. Had you ever gotten it for another person?

ACC: Yes, sir.

.    .    .    .    .

---

1. See *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

MJ: Why did you get this marihuana for Rowe?

.  .  .  .  .

ACC: Because he asked me.

MJ: Well that's not good enough reason. You had to have more reason than that. I mean if anybody had asked you, would you have gotten it?

ACC: No, sir.

.  .  .  .  .

MJ: Why didn't you just tell him where to go get it?

ACC: Because I didn't want to involve anyone else.

MJ: Did you want to conceal the identity of your source?

ACC: Yes, sir.

MJ: Had you gotten marihuana there before?

ACC: That was the first occasion.

.  .  .  .  .

MJ: Now you say you did this out of friendship, just because he asked you, right?

ACC: Yes, sir.

.  .  .  .  .

MJ: On the 27th, he called you. Okay. What did you tell him?

ACC: That I didn't know but I'd find out.

MJ: And what did you do?

ACC: I found out, he called me back, and I told him I would.

MJ: All right, and then what did you do?

ACC: Later on that evening I picked it up. I couldn't get it in a smaller quantity. I had to get it in a quantity that I had stated to him earlier that was available, so I did have to break it down into two bags. And when he saw me, he asked me if I had gotten it and I said yes.

MJ: Okay, Did you tell him how much you had at that time?

ACC: I told him when he first called that that was all I could obtain, that that was all that was available.

MJ: How much was that?

ACC: Twenty dollars.

MJ: Now did you arrange for him to come to your house at approximately three o'clock that afternoon?

ACC: Yes, sir, I believe I did.

MJ: Now according to the stipulation, he went there around three o'clock and you weren't there. Is that correct?

ACC: Yes, sir.

MJ: Why weren't you there?

ACC: Because I'd gotten tied up with other things.

MJ: And?

ACC: And I felt that even though I wasn't there, I'd later drop it by his house.

MJ: . . . What time did you drop it off at his house?

ACC: Around four o'clock.

MJ: About an hour later.

ACC: Yes, sir.

MJ: You only dropped off one bag at that time?

ACC: When I called him back, after I'd made the arrangements to get it, he told he didn't want a quantity that large. I had already made the arrangements, so I had to break it down.

MJ: Okay. He didn't want twenty dollars worth, he only wanted ten. Is that what he told you?

ACC: Yes, sir.

MJ: So that's why you dropped off one bag?

ACC: Right. That's why I dropped it off.

MJ: Now later on, you saw him again. Is that correct?

ACC: Yes, sir.

MJ: And what happened that time?

.  .  .  .  .

ACC: Then he asked me if I had another one. I told him I was not in the habit of keeping those on hand but I happened to have one.

.  .  .  .  .

MJ: I want you to tell me in your own words how this came about.

ACC: Well, when he asked me if I had another one, I told him I was not in the business of keeping those on hand; so at first I told him I didn't have another one. Then he told me that he only had a twenty-dollar bill, and I'd have to go to the house to break it. So as we got into the car and we were riding away, he asked me if I knew where he could get one. I told him—I thought about it and then I decided to tell him where I had gotten that one.

MJ: Did you tell him where you got it?

ACC: Yes, because I remembered at that time—it was only at that instant that I remembered that he knew this other person. But I also told him that I didn't know if that person would have another one. It was during the ride to my house to change the twenty that I decided to give him the one that I had.

MJ: I see. Then what did you tell him about the other bag?

ACC: I just told him that I'd give it to him.

MJ: Did you say anything to him about you promising it to somebody else?

ACC: Not that I remember.

MJ: Had you already promised it to somebody else?

ACC: No. I had plans, but I didn't promise it.

MJ: What do you mean by you had plans? You knew somebody you thought might want it? Is that what you mean?

ACC: Yes, sir. I had to get rid of it.

MJ: So you were going to try to sell it to this other person in order to get rid of it? Is that what you mean?

ACC: I was going to give it to him.

.    .    .    .    .

MJ: You decided it'd be better to sell it to Rowe than to hunt this other fellow down and give it to him. Is that basically what you had in mind?

ACC: Well I decided, right, that that was my other ten dollars worth; that I had got it for him in the first place.

MJ: No point in losing your ten dollars, was it? Did that go through your mind?

ACC: Right.

At this point, the military judge queried the accused as to whether he understood the defense of entrapment and the possibilities of other defenses. The accused signified his understanding. The military judge continued:

MJ: . . . Captain Epps, I'm sure you've explored these issues of entrapment and agency, haven't you?

IDC: Yes, Your Honor.

MJ: Are you satisfied that they are not applicable in this case?

IDC: I am, Your Honor.

MJ: Have you gone over that with your client?

IDC: I have, Your Honor.

Appellate defense counsel, citing *United States v. Henry,* 23 U.S.C.M.A. 70, 48 C.M.R. 541 (1974), contend that the military judge's providency inquiry was inadequate because he failed to explain to the accused that a person who procures marijuana at an informer's request and who receives no monetary benefit for his services is acting as an agent for the buyer and is not guilty of selling marijuana.[2]

In *Henry,* supra, the Court found that the military judge's failure to give the proper instruction relative to the agency question there presented constituted reversible error. A correct instruction, the Court concluded would have required the members to acquit Henry if they believed that he undertook to obtain drugs on behalf of another, at his request, without profit, and that he was not personally selling the drug or acting as an agent for the seller.

Here, the accused admitted that he purchased a quantity of marijuana for

2. The Court held:
   When narcotics are obtained from a seller, at no profit, by an accused at the request of a government informer and *for no other rea-* son, there can be no conviction for selling narcotics to his principal.
   48 C.M.R. at 544. (Emphasis supplied.)

Rowe at that airman's request. As to this transaction, although the accused financed the original purchase with his own money,[3] he was clearly acting as an agent for Rowe. However, the accused also obtained an additional quantity of marijuana which he intended to dispose of in some manner of his own choosing. Thus, as to this quantity the accused was the owner and, therefore, could not reasonably or logically be considered as an agent for Rowe. Consequently, when the accused agreed to provide Rowe with this marijuana, even on a cost basis, he became a seller rather than a mere agent or transferor of the contraband. *United States v. Henry,* supra. Moreover, that the accused's purpose in selling the marijuana to Rowe was simply "to get rid of it," rather than to make a profit, provides no defense to the crime as alleged. *United States v. Rock,* 9 U.S.C.M.A. 503, 26 C.M.R. 283 (1958).

■ Under these circumstances we hold that the accused admitted sufficient facts to negative the assertion that he was merely an agent for the purchaser. Hence, the military judge did not err in failing to explore further that aspect of his plea. Finding the accused's plea of guilty to be provident, we affirm.

The findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.

3. See *United States v. Suter,* 21 U.S.C.M.A. 510, 45 C.M.R. 284 (1972).